IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


ENVIROCARE INTERNATIONAL, INC., )
          Plaintiff, )
          )
      vs. )      Civil Action No. 09-909
          )
ESSROC CEMENT CORP., )
TURBOSONIC TECHNOLOGIES, INC. )
and CAPITOL CEMENT CORP., )
         Defendants. )

<u>MEMORANDUM OPINION</u>

Plaintiff, EnviroCare International, Inc. ("EnviroCare"), brings this action against

Defendants Essroc Cement Corp. ("Essroc"), TurboSonic Technologies, Inc. ("TurboSonic") and

Capitol Cement Corp. ("Capitol Cement"), alleging that Defendants have directly and indirectly

infringed and/or that they will directly and indirectly infringe unspecified claims of U.S. Patent

6,464,952 ("the '952 patent").

Presently before this Court for disposition is a motion for judgment on the pleadings,

submitted by Defendant TurboSonic and joined in by Defendants Essroc and Capitol Cement.

For the reasons that follow, the motion will be denied.

<u>Facts</u>

On October 15, 2002, the '952 patent was duly and legally issued for an invention entitled

"Sulfur Dioxide Abatement Method" and Plaintiff holds all rights and interest in the'952 patent.

(Am. Compl. ¶ 7 & Ex. A.)  Plaintiff alleges that Essroc and Capitol Cement awarded a contract

to TurboSonic on or about June 9, 2009 for the supply and installation of a custom built sulfur

dioxide abatement equipment at a cement plant that they owned, controlled and/or operated in

Martinsburg, West Virginia.  Plaintiff further alleges that, when put into operation, this

installation will infringe the '952 patent. Plaintiff notified Essroc of its '952 patent prior to the date the contract for the installation was awarded to TurboSonic and cautioned Essroc regarding infringement of the patent. (Am. Compl. ¶¶ 8-9.)

Procedural History

Plaintiff filed this action on July 13, 2009 and it filed a First Amended Complaint on January 27, 2010 (Docket No. 8). Jurisdiction is based on the federal question presented by the patent claims, 28 U.S.C. §§ 1331 and 1338. (Am. Compl. ¶ 5.) The complaint alleges that Essroc and Capitol Cement have directly, contributorily and/or by inducement literally, or under the doctrine of equivalents, infringed and continue to infringe the '952 patent by practicing the methods that infringe the patent, and that TurboSonic has contributorily, and/or by inducement literally, or under the doctrine of equivalents, infringed and continues to infringe the '952 patent by manufacturing, selling and/or offering for sale the installation. Plaintiff seeks a declaration that Defendants have infringed the '952 patent, an order enjoining them from further infringement, damages (including enhanced damages for willful infringement), prejudgment and postjudgment interest, attorney's fees and such other costs and further relief as the Court may deem just and proper.

On February 17, 2010, Defendants filed answers to the Amended Complaint and Essroc and Capitol Cement also filed counterclaims thereto (Docket Nos. 14, 16, 18). On April 15, 2010, TurboSonic filed a motion for judgment on the pleadings and on April 22, 2010, Essroc and Capitol Cement filed a motion for joinder in TurboSonic's motion. The motion for joinder filed by Essroc and Capitol Cement will be granted and the motion for judgment on the pleadings will be treated as filed by all defendants.

Defendants argue that the complaint fails to state a claim for direct patent infringement because it alleges only that infringement might occur at some unspecified time in the future, and that the complaint fails to state a claim for indirect infringement because such a claim arises only when a defendant has either induced or contributed to an act of direct infringement.

Plaintiff responds that liability for contributory infringement can attach immediately upon an offer for sale and the act of infringement need not have already occurred and anticipatory acts of indirect infringement can be enjoined before the infringing system is operational. In the alternative, Plaintiff requests leave to amend its complaint, now that discovery is ongoing, to allege that the cement plant is operational and that infringement has occurred.

Standard of Review

A motion for judgment on the pleadings is treated in the same manner as a motion to dismiss for failure to state a claim upon which relief may be granted. The court should "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the ... nonmoving party. Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001) (citing Institute for Scientific Info., Inc. v. Gordon & Breach, Science Publishers, Inc., 931 F.2d 1002, 1004 (3d Cir. 1991)). In reviewing the motion, the Court may refer to any documents attached to the complaint and matters of public record. Pension Benefit Guaranty Corp. v. White Consolidated Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

The Supreme Court has recently stated that:

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [Bell Atlantic Corp. v.] Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant- unlawfully-harmed-me accusation. Id., at 555, 127 S.Ct. 1955

(citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557, 127 S.Ct. 1955 (brackets omitted).

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

Direct Patent Infringement

Direct patent infringement is defined as follows:

whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

35 U.S.C. § 271(a). Form 18 following the Federal Rules of Civil Procedure sets forth a sample complaint for patent infringement, which should contain the following elements: 1) a statement of jurisdiction; 2) a statement that the plaintiff owns the patent; 3) a statement that the defendant "has infringed and is still infringing" the patent by "making, selling, and using [a device] that embod[ies] the patented invention"; 4) the plaintiff has given the defendant notice of its infringement; and 5) a demand for an injunction and damages. See McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1356-57 (Fed. Cir. 2007).

Defendants contend that for a method patent, such as the '952 patent-in-suit with its method claims, infringement "occurs when a party performs all of the steps of the process."

4

Ricoh Co., Ltd. v. Quanta Computer, Inc., 550 F.3d 1325, 1333 (Fed. Cir. 2008) (quoting BMC Res., Inc. v. Paymentech, L.P., 498 F.3d 1373, 1379 (Fed. Cir. 2007)). They further argue that "the sale of equipment to perform a process is not a sale of the process" within the meaning of § 271(a). Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc., 576 F.3d 1348, 1359 (Fed. Cir. 2009) (quoting Joy Tech., Inc. v. Flakt, Inc., 6 F.3d 770, 773 (Fed. Cir. 1993)). "Accordingly, a mere offer to sell a machine ... cannot serve as the sole basis for finding infringement of the claimed method." Embrex, Inc. v. Service Eng'g Corp., 216 F.3d 1343, 1349 (Fed. Cir. 2000).

Plaintiff responds that: 1) the statute was amended in 1994 to add "offers to sell" as a new basis for direct infringement liability, thereby contemplating liability for acts that occur prior to the actual use of the patented invention; 2) cases holding that the sale of equipment to perform a patented process cannot be the sole basis for finding direct infringement do not exclude liability in a case such as this one, in which contributory infringement is alleged; and 3) the statute specifically permits requesting injunctive relief for anticipatory acts of infringement, which undermines Defendants' argument that liability for infringement cannot attach until the infringing system is operational. See Metabolite Labs., Inc. v. Laboratory Corp. of America, 370 F.3d 1354, 1369 (Fed. Cir. 2004) ("it is possible for a patentee to also seek a declaratory judgment against a future infringer.")

Plaintiff also notes that the Ricoh case cited by Defendants actually supports its position. The court declined to address "whether a process may ever be sold so as to give rise to liability under § 271(a)" and determined that the sale or offer for sale of computer software containing instructions to perform the patented method was not sufficient to give rise to liability for direct infringement. 550 F.3d at 1333. However, the court went on to analyze the defendant's liability

for contributory infringement under § 271(c). The court held that the statute "incorporates the core notion that one who sells a component especially designed for use in a patented invention may be liable as a contributory infringer," and that the legislative history reflects that "[o]ne who makes a special device constituting the heart of a patented machine and supplies it to others with directions (specific or implied) to complete the machine is obviously appropriating the benefit of the patented invention." Id. at 1337 (quoting H.R. Rep. No. 82-1923, at 9 (1952)).

Defendants argue that Plaintiff's citations do not address method claims which, even after the 1994 amendments, still require actual infringement before suit can be brought. They note that the court in Ricoh stated that, "[i]t appears to be undisputed that, assuming direct infringement is found, [defendant] would be liable under § 271(c)." 550 F.3d at 1337. Thus, they contend, in this case, where direct infringement is not alleged to have occurred, contributory infringement cannot be found. See also Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1317 (Fed. Cir. 2009).

Indirect Patent Infringement

A patent can also be infringed indirectly:

Whoever actively induces infringement of a patent shall be liable as an infringer.

Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(b, c). The Court of Appeals for the Federal Circuit has held that:

In order to prevail on an inducement claim, the patentee must establish "first that there has been direct infringement, and second that the alleged infringer

6

knowingly induced infringement and possessed specific intent to encourage another's infringement." <u>Minn. Mining & Mfg. Co. v. Chemque, Inc.</u>, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002) (citation omitted). Specific intent requires a "showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." <u>DSU Med. Corp. v. JMS Co., Ltd.</u>, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in relevant part) (quoting <u>Manville Sales Corp. v. Paramount Sys., Inc.</u>, 917 F.2d 544, 554 (Fed. Cir.1990)).

<u>ACCO Brands, Inc. v. ABA Locks Mfrs. Co.</u>, 501 F.3d 1307, 1312 (Fed. Cir. 2007).

Defendants argue that, because Plaintiff has failed to state a claim for direct infringement, it has necessarily failed to state a claim for indirect infringement. Plaintiff responds that: 1) the statute was amended in 1994 to indicate that liability can attach upon an "offer for sale" which necessarily precedes the act of direct infringement; 2) even prior to the amendment, courts acknowledged that contributory infringement can precede the direct infringement. <u>See</u> <u>Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.</u>, 754 F.2d 345, 348 (Fed. Cir. 1985). However, Defendants reply that the cases Plaintiff cites in which no direct infringement was required were apparatus claims, not method claims. <u>Embrex, Inc. v. Service Eng'g Corp.</u>, 216 F.3d 1343, 1349 (Fed. Cir. 2000); <u>Rotec Indus., Inc. v. Mitsubishi Corp.</u>, 215 F.3d 1246, 1252 (Fed. Cir. 2000). In addition, Defendants argue that allowing indirect infringement claims to continue because they preceded the acts of direct infringement does not permit Plaintiff to allege indirect infringement based upon hypothetical acts of direct infringement that have not taken place. <u>ACCO Brands</u>, 501 F.3d at 1312.

The Court need not resolve these issues. Plaintiff requests, inter alia, a declaration that Defendants will infringe the '952 patent once the installation is operational. Defendants contend that this claim should be dismissed because infringement is not "imminent." The Supreme Court has held that whether a declaratory judgment action satisfies the case-or-controversy requirement

depends on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Maryland Cas. Co. v Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)). District courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." Id. at 136 (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)).

Defendants cite Lang v. Pacific Marine & Supply Co., 895 F.2d 761, 764 (Fed. Cir. 1990), in which the allegedly infringing product would not be finished until at least nine months after the complaint was filed. In this case, however, Plaintiff has alleged that a sale occurred on June 9, 2009, that it believes the plant is now operational and that discovery in this case is ongoing (and is not scheduled to be completed until January 2011), which will allow it to determine whether the plant is operational and to amend the complaint to allege direct infringement. Defendants have not contended that the plant will never be operational. Indeed, they have not indicated whether the plant is operational or not. Under these circumstances, the declaratory judgment portion of this case should not be dismissed.

Defendants have not requested "partial" judgment on the pleadings with respect to Plaintiff's other claims. Moreover, even if they had done so, no purpose would be served by dismissing part of this case only to have it be refiled once the plant is operational and Plaintiff can allege active direct and indirect infringement of its method patent. Therefore, Defendants' motion for judgment on the pleadings will be denied.

An appropriate order follows.

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: May 17, 2010